HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BILLY ABREGO OLEA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHIPOTLE MEXICAN GRILL, INC., *et al.*,

Defendants.

CASE NO. 2:24-cv-01643-RAJ

ORDER

## I.    INTRODUCTION

THIS MATTER comes before the Court on Plaintiff Billy Abrego Olea's Motion to Remand, Dkt. # 30.  The Court has reviewed the motion, the submissions in support of and in opposition to the motion, and the balance of the record.  For the reasons set forth below, the Court **GRANTS** Mr. Olea's motion.

## II.    BACKGROUND

A recent amendment to the Washington Equal Pay and Opportunities Act ("EPOA") requires employers "with 15 or more employees" to disclose in "each posting for each job opening" the "wage scale or salary range" and "a general description of all of the benefits and other compensation to be offered to the hired applicant."  RCW 49.58.110(1)(a), (3).

ORDER – 1

The amendment's enactment spawned numerous putative class actions challenging alleged pay transparency violations, including this case.

Mr. Olea brings this putative class action against Chipotle Mexican Grill, Inc. and certain of its affiliates (collectively, "Chipotle") for failure to disclose wage or salary information as required by the EPOA.  Dkt. # 1-2.  He alleges that on or about September 5, 2024, he applied for a job opening with Chipotle in King County, Washington.  *Id.* ¶ 27. He was "qualified to perform the position for which he applied." *Id.* ¶ 28.  The job posting he applied to "did not disclose the wage scale or salary range being offered." *Id.* ¶ 29.  As a result of the lack of pay information, he "was unable to determine the rate of pay for the position"; "remains unable to evaluate the pay for the position and compare that pay to other available positions in the marketplace, which negatively impacts [his] current and lifetime wages"; his "ability to negotiate pay remains adversely affected"; and he "lost valuable time applying" for the position. *Id.* ¶¶ 33–36.

Mr. Olea filed this lawsuit in King County Superior Court on September 5, 2024. Dkt. # 1-2.  Chipotle removed the case to federal court based on the Class Action Fairness Act ("CAFA").  Dkt. # 1.   Mr. Olea then moved to remand.  Dkt. # 30.

### III.  LEGAL STANDARD

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  In the typical case, there is a "strong presumption against removal jurisdiction" and the "court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). However, "no antiremoval presumption attends cases involving the CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  Even so, the "rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to the CAFA as to

ORDER – 2

any other type of removed case." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). "The party invoking federal jurisdiction bears the burden of establishing" Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## IV.  DISCUSSION

### A.  Plaintiff Lacks Article III Standing

To establish Article III standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v Robins*, 578 U.S. 330, 338 (2016).  This case involves injury in fact, the "first and foremost of standing's three elements." *Id.* (citation modified).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560).

"Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341.  Thus, "a bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Id.*  To determine whether a statutory violation constitutes a concrete harm, courts in the Ninth Circuit engage in a two-part inquiry. *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021), *abrogated on other grounds by Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026).  First, courts consider "whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights)." *Id.* (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1116 (9th Cir. 2017)).  Second, if the answer is yes, then courts "assess 'whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Id.* (quoting *Robins*, 867 F.3d at 1116).

Here, because Mr. Olea asserts a violation of his statutory right to wage or salary information under the EPOA, the Court will proceed under the *Magadia* factors.  Under

ORDER – 3

the first step, the EPOA's disclosure requirement was enacted to protect concrete interests. Specifically, as several other courts in this District have found, the EPOA's disclosure requirement "was established to protect applicants by arming them with sufficient information to ensure fair and equitable pay negotiations, and to avoid wasting time interviewing for positions whose pay would never be adequate." *Spencer v. Vera Whole Health, Inc.*, No. 24-cv-337, 2024 WL 3276578, at *3 (W.D. Wash. July 2, 2024) (analyzing legislative history); *see, e.g.*, *Hill v. ACV Auctions Inc.*, No. 25-cv-616, 2025 WL 1582249, at *3 (W.D. Wash. June 4, 2025) (same); *Hill v. Hydromax USA LLC*, No. 25-cv-1621, 2025 WL 3677481, at *3 (W.D. Wash. Dec. 18, 2025) (same); *Davis v. Delta Air Lines, Inc.*, No. 24-cv-954, 2026 WL 914781, at *3 (W.D. Wash. Apr. 3, 2026) (same).

Under the second step, the alleged EPOA violation in this case does not actually harm, or present a material risk of harm, to the concrete interests the EPOA is intended to protect. Courts in this District have held that "unless the plaintiff was 'a bona fide applicant' for employment, an EPOA violation involving 'a job posting with no compensation information included' does not 'by itself . . . manifest concrete injury[.]" *Davis*, 2026 WL 914781, at * 3 (quoting *Hill v. Les Schwab Tire Ctrs. of Wash. LLC*, No. 24-cv-425, 2025 WL 3062646, at *4 (W.D. Wash. Oct. 31, 2025)). "This makes sense because failing to disclose pay information cannot impact pay negotiations, time spent interviewing, or compensation for a job the plaintiff never actually intended to pursue." *Id.* "Thus, 'a nominal applicant with no interest in the position will neither receive a benefit from early pay disclosure nor be harmed by the lack thereof.'" *Id.* (quoting *Les Schwab*, 2025 WL 3062646, at *4).

Mr. Olea alleges that as a result of Chipotle's disclosure failure, he "lost valuable time" applying for the position, and his "ability to negotiate pay" and "lifetime wages" were adversely affected. Dkt. # 1-2 ¶¶ 33–36. "But time lost in merely submitting an application is 'not an injury that the EPOA seeks to prevent or redress.'" *Partridge v. Heartland Express Inc. of Iowa*, No. 24-cv-5486, 2024 WL 4164245, at *4 (W.D. Wash.

ORDER – 4

Sept. 12, 2024) (quoting *Vera Whole Health*, 2024 WL 3276578, at *3). "A generalized assertion of time lost, therefore, does not support Article III standing." *Id.; see also Davis*, 2026 WL 914781, at *7 (noting that to the extent plaintiff was not a bona fide applicant, time lost for applying to the position was "self-inflicted and, in any event, 'not an injury that the EPOA seeks to prevent or redress.'") (quoting *ACV Auctions*, 2025 WL 1582249, at *3). Next, Mr. Olea's allegations regarding the impact on his "ability to negotiate pay" and "lifetime wages" are conclusory and speculative, and thus cannot support Article III standing. Beyond a conclusory allegation that he was "qualified to perform the position for which he applied," Dkt. # 1-2 ¶ 28, there is no indication in the record that Mr. Olea would have been selected for an interview or would engage in pay negotiations. Without these facts, the Court cannot conclude Mr. Olea suffered, or had a material risk of suffering, the type of harm contemplated by the EPOA. *See Spencer v. Total Renal Care, Inc.*, No. 24-1359, 2024 WL 4834901, at *3 (W.D. Wash. Nov. 20, 2024) (rejecting "conclusory allegation that Plaintiff was qualified to perform the position."); *Spencer v. Aramsco Inc.*, No. 25-cv-1672, 2026 WL 376942, at *3 (W.D. Wash. Feb. 11, 2026) (finding allegations regarding adverse effect on pay negotiations and economic harm "assume without support that [plaintiff] would have been selected for an interview and ultimately hired for this or equivalent jobs.").

Chipotle's arguments in favor of Article III standing are unpersuasive. First, Chipotle argues that under "controlling decisional law," harms such as monetary harms, lost time, and "informational" harm support standing. Dkt. # 34 at 10–13. As discussed above, however, the Complaint's allegations regarding monetary harms are conclusory and speculative, and thus cannot support Article III standing. Next, Chipotle does not cite any binding cases for the proposition that lost time, on its own, is sufficient to establish Article III standing in all instances. The only Ninth Circuit case cited by Chipotle is unpublished, and merely notes that "*in certain circumstances*," "lost time *and income* spent dealing with wrongful conduct can constitute a cognizable injury in fact." *Sisley v. Spring Comms. Co.*,

ORDER – 5

284 F App'x 463, 366 (9th Cir. 2008) (emphasis added).  As for "informational" harm, as noted above, courts in the Ninth Circuit apply the *Magadia* test to determine whether a statutory violation, such as omission of statutorily required information, constitutes concrete harm.  The facts of this case do not support Article III standing under that test.

Second, Chipotle argues that for cases brought under certain civil rights and anti-discrimination statutes, courts have recognized Article III standing for so-called "tester" plaintiffs.  Dkt. # 34 at 14.  Chipotle cites *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).  *Id.*  In that case, involving claims under the Fair Housing Act, the Supreme Court defined "testers" as "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices."  *Havens*, 455 U.S. at 373.  The Supreme Court made clear that "congressional intention cannot be overlooked in determining whether testers have standing to sue."  *Id.*  Significantly, it found that one of the testers "suffered injury in precisely the form the statute was intended to guard against," and therefore had standing, while another tester did not suffer an injury as contemplated by the statute.  *Id.* at 373–74. In short, statutory intent matters.  As explained above, the record does not show that Mr. Olea suffered, or was at material risk of suffering, the type of harm the EPOA seeks to redress.  Chipotle's reliance on "tester" plaintiffs cases is therefore misplaced.  *See Atkinson v. Aaron's LLC*, 733 F. Supp. 3d 1056, 1070–71 (W.D. Wash. 2024) (rejecting similar argument that "tester" plaintiffs have standing and noting "the civil rights cases reinforce that standing requires allegations of sufficient personal injury.").

Third, Chipotle argues Mr. Olea's standing theory is contrary to his own allegations. Dkt. # 34 at 14–16.  As some courts have observed, the recent trend in EPOA cases, where the plaintiff argues a lack of injury-in-fact, is "something of a role reversal from the typical case."  *Davis*, 2026 WL 914781, at *2.  But regardless of the unusual position, the Court cannot find Article III standing based on mere conclusory or speculative allegations.  Mr. Olea's *well-pled* allegations do not support Article III standing.

ORDER – 6

Fourth, Chipotle argues remand would be inconsistent with the Washington Supreme Court's decision in *Branson v. Washington Fine Wine & Spirits LLC*, 574 P.3d 1031 (Wash. 2025). Dkt. # 34 at 17. In *Branson*, the Washington Supreme Court considered the certified question: "What must a Plaintiff prove to be deemed a 'job applicant' within the meaning of RCW 49.58.110(4)?" *Branson*, 574 P.3d at 1034. It answered:

> A job applicant need not prove they are a 'bona fide' applicant to be deemed a 'job applicant.' Rather, in accordance with the plain language of RCW 49.58.110(4), a person must apply to any solicitation intended to recruit job applicants for a specific available position to be considered a "job applicant," regardless of the person's subjective intent in applying for the specific position.

*Id.* at 1040. The *Branson* court expressly declined to reach the issue of standing. *Id.* at 1039 n.7 ("We decline to address the standing argument, as it is beyond the scope of the certified question.") As many courts in this District have found, "the state Supreme Court's decision in *Branson* does not change this Court's standing analysis" because the "*Branson* court did not address standing—neither federal nor statutory." *Spencer v. Walmart Inc.*, No. 24-cv-1793, 2025 WL 2910569, at *5 (W.D. Wash. Oct. 14, 2025); *see, e.g.*, *Kent v. Tech Mahindra (Americas) Inc.*, No. 24-cv-1168, 2025 WL 2810715, at *4 (W.D. Wash. Oct. 3, 2025) ("the state Supreme Court's decision in *Branson* does not change this Court's standing analysis"); *Eggleston v. Bruckner Truck Sales Inc.*, No. 25-cv-1467, 2025 WL 3153503, at *3 (W.D. Wash. Nov. 12, 2025) ("The court rejects [defendant's] proposal that the *Branson* holding is pertinent to the court's Article III standing analysis.").

In sum, the Court finds this case must be remanded for lack of Article III standing. In doing so, the Court joins numerous other courts in this District that have reached the same conclusion in nearly identical circumstances. *See Hill v. Airgas USA LLC*, No. 25-cv-1531, 2025 WL 3640901, *3 (W.D. Wash. Dec. 16, 2025) (collecting cases).

ORDER – 7

**B.      The Futility Exception Does Not Apply**

"Ordinarily, when a district court concludes that it lacks subject matter jurisdiction over an action removed to federal court, the appropriate remedy is to remand the case to state court." *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022) (citing 28 U.S.C. § 1447(c)).  "A narrow 'futility' exception to this general rule permits the district court to dismiss an action rather than remand it if there is 'absolute certainty' that the state court would dismiss the action following remand." *Id.* (quoting *Polo*, 833 F.3d at 1197–98).  The Court does not find there is "absolute certainty" that this case will be dismissed in state court.  "State courts are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196.  Thus, it is possible that this case may proceed in state court even though Mr. Olea did not suffer an injury sufficient to support Article III standing in federal court.  *See Milito v. Lucid Grp. USA Inc.*, No. 25-cv-1664, 2025 WL 3640898, at *3 (W.D. Wash. Dec. 16, 2025) (declining to apply futility exception in similar EPOA case);  *Airgas*, 2025 WL 3640901, at *4 (same); *Davis*, 2026 WL 914781, at *8 (same).

## V.   CONCLUSION

For the forgoing reasons, the Court **GRANTS** Plaintiff's Motion to Remand, Dkt. # 30.  This case is remanded to King County Superior Court.

DATED this 15th day of May, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 8